DAVIS, Judge.
 

 The State challenges the final order of the trial court granting Mark Gilson’s motion to dismiss the charge of attempted first-degree murder of a law enforcement officer due to the State’s destruction of certain evidence. Because the trial court’s ruling is based on facts presented in the
 
 *264
 
 motion to dismiss that are not supported by the record, we reverse.
 

 In 1997, Gilson was convicted after jury trial of attempted first-degree murder of a law enforcement officer. The trial court sentenced Gilson to forty years’ imprisonment with a twenty-five-year minimum mandatory. This court affirmed Gilson’s conviction and sentence.
 
 See Gilson v. State,
 
 725 So.2d 1119 (Fla. 2d DCA 1998) (table decision).
 

 On November 13, 2000, however, Gilson sought and was granted postconviction relief in the form of a new trial. As the State prepared to retry Gilson, both parties learned that certain evidence from the first trial had been destroyed despite the fact that it had been the subject of a protective order entered on April 4, 1997. Gilson moved to dismiss the charge on the basis that the destroyed evidence, which included Gilson’s car and the clothing Gil-son had been wearing on the night of the incident, was exculpatory and had been destroyed by the State in bad faith.
 

 The charges against Gilson arose from a traffic stop that resulted in gunfire being exchanged between an occupant of Gilson’s vehicle and Lee County Sheriffs Deputy Mark Cohen. At Gilson’s first trial, Deputy Cohen testified that before stopping Gilson, he had pulled his patrol car alongside of Gilson’s vehicle. Deputy Cohen further testified that he observed that the driver was the only occupant of the vehicle. After he effectuated the traffic stop, Deputy Cohen exited his vehicle, but before he could approach the other car, a man exited the driver’s side of that two-door vehicle and shot at the deputy, striking him in the leg. Deputy Cohen returned fire, and as the car sped off, he fired several shots into the vehicle. Gilson was later apprehended, wounded and hiding under a house in the general area.
 

 Gilson, on the other hand, presented a misidentification defense at the first trial. Although he admitted that he was driving the car, he testified that a man named Rick Roberts was riding in his backseat on the driver’s side. Gilson maintained that when Deputy Cohen stopped him that night, Roberts pushed his way out of the backseat and out the driver’s side door and began firing at Deputy Cohen. Gilson asserted that he then drove off as the officer fired at his vehicle. According to Gilson, he was shot in the back by Deputy Cohen, who was firing into his car from the rear.
 

 Although all thirty-three items of evidence that were subject to the protective order put in place after the first trial were subsequently destroyed, Gilson’s motion to dismiss addressed only the evidentiary value of the clothing he was wearing on the night of the incident and the car he drove that night. In his motion to dismiss, Gil-son maintained that further forensic examination of his shirt and car would have impeached the State’s evidence and that he was now unable to obtain a fair trial due to the destruction of these items. Gilson therefore asserted that, pursuant to
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the attempted first-degree murder charge must be dismissed.
 

 Following a hearing, the trial court granted Gilson’s motion to dismiss, concluding that the evidence “was, at the very least, favorable to the defense as impeachment evidence” and that “the destruction of this evidence has prejudiced the defense because it deprives [Gilson] of the ability to receive a fair trial.” It is the trial court’s order dismissing the charge based on the destruction of evidence that the State now appeals.
 

 On appeal, the State argues that the trial court erred in granting Gilson’s motion to dismiss because Gilson failed to show that he could not obtain comparable
 
 *265
 
 evidence by other reasonably available means.
 
 See California v. Trombetta,
 
 467 U.S. 479, 488-89, 104 S.Ct. 2528, 81 L.Ed.2d 418 (1984) (noting that the State’s duty “to preserve evidence ... must be limited to evidence that might be expected to play a significant role in the suspect’s defense,” which the Court defined in part as being “of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means”).
 

 Asserting that he would pursue the same line of defense at his second trial as he did at the first, Gilson argued below that the shirt is necessary to impeach the officer’s testimony indicating that Gilson was the shooter. He maintained that immediately after the incident, Deputy Cohen three times described the shooter as wearing a white, off-white, or “lighter colored” short-sleeved shirt, possibly a button-down. The shirt that Gilson was wearing at the time he was apprehended on the night of the shooting — the same shirt that was destroyed by the State — was a dark blue, long-sleeved shirt.
 

 We conclude that for impeachment purposes, a photograph of the shirt is comparable evidence. In fact, Gilson introduced a photo of the shirt into evidence for this purpose at his first trial during the cross-examination of the officer who first interviewed Gilson on the night of the shooting. That officer confirmed that the photograph accurately depicted what Gilson was wearing when he was apprehended. And after the hearing on the motion to dismiss, but prior to the trial court’s issuing its dismissal order, the State informed the court that photos of Gilson’s clothing were still available to Gilson.
 
 [1]
 

 Gilson also claimed below that the shirt is necessary to refute the victim’s testimony that Gilson was the only occupant of the car that night. In support of his motion to dismiss, Gilson presented the sworn statement of a bouncer at a nearby club who made a statement to police that on the night of the shooting, two men attempted to enter the club about an hour prior to the shooting. According to the bouncer’s statement, one man had on a black jersey-type shirt and the other “had on a white shirt on [sic] button-down ... it was opened and it was sloppy looking.” The man in the white shirt was acting “jittery, you know in the mood he wanted to leave,” and he said to the other man in the black shirt, “Come on, let’s get the f— out of here.” Gilson argues that the shirt, the bouncer’s statement, and Deputy Cohen’s description of the shooter establish that he was with another man on the night in question and that because Gilson was the one wearing a dark colored shirt, the other man was wearing the white or light-colored shirt and was the individual who Deputy Cohen saw shooting at him.
 

 We conclude, however, that Gilson can make the same argument with a photograph of the shirt coupled with the officer’s testimony confirming that the photograph accurately depicts what Gilson was wearing on the night of the shooting. We can see no reason why the actual shirt would have to be introduced to assert this argument.
 

 Finally, with regard to the shirt, Gilson argued that it is necessary to impeach Deputy Cohen’s testimony that he shot his
 
 *266
 
 assailant in the abdomen. Gilson argued at the dismissal hearing below that the deputy testified he shot the person who exited the car in the stomach. Gilson therefore reasoned that the lack of a bullet hole in the front of the shirt that he was wearing when he was arrested would prove his claim that although he may have been the driver of the stopped vehicle, he was not the person who exited the vehicle, started shooting at the deputy, and was shot in the stomach by the deputy. Furthermore, Gilson alleged that the “medical” testimony presented at the first trial was inconsistent as to whether Gilson was shot in the abdomen or the back and that he was shot only in the back as he drove away.
 

 At the hearing on Gilson’s motion, the State offered no argument to rebut the need for the shirt to show the placement of the bullet holes.
 
 [2]
 
 Gilson now argues on appeal that this court therefore is precluded from considering this issue. We note that it is true that in most cases, the State’s failure to present to the trial court a specific argument against dismissal would deny it the opportunity to raise that argument for the first time on appeal.
 
 See State v. Pruitt,
 
 977 So.2d 604, 605 (Fla. 2d DCA 2007) (“The prosecutor made no argument [below] asserting the existence of a prima facie case or contending that the knowledge element could not properly be considered on a motion to dismiss. The State is therefore barred from arguing these points for the first time on appeal.”). However, this case is different because here the trial court based its ruling on Gilson’s misrepresentation of the facts.
 

 In his motion to dismiss, Gilson alleged that Deputy Cohen testified at the first trial that he shot the shooter in the abdomen. To support this allegation, the motion quoted the State’s redirect examination of Deputy Cohen, and Gilson attached to the motion page 151 of the transcript, which includes the quoted testimony. That exchange is as follows:
 

 Q. Did you shoot the defendant?
 

 A. Yes, I did.
 

 Q. Where?
 

 A. In the stomach area.
 

 However, on recross-examination of Deputy Cohen, Gilson’s trial counsel elicited the following responses:
 

 Q. [Deputy] Cohen, was Mr. Gilson shot in the front or the back, do you know?
 

 A. The front portion.
 

 Q. Are you sure about that?
 

 A. That’s what I am told.
 

 Q. But you don’t have personal knowledge of that?
 

 A. No.
 

 Q. Okay.
 

 A. As I was returning fire, he was always facing toward me.
 

 Q. I am going to ask this in a different way. You don’t have any personal knowledge as to whether you shot Mr. Gilson in the stomach from the front?
 

 A. No.
 

 This exchange appears on page 152 of the transcript, which was not attached to the motion nor brought to the trial court’s attention.
 

 In his motion to dismiss, Gilson specifically asked the trial court to decide whether the missing shirt would impeach the deputy’s testimony that he shot Gilson in
 
 *267
 
 the stomach, thereby lending support to Gilson’s position that he could not have been the shooter because he was shot in the back.
 

 However, as the full record reflects, Deputy Cohen never testified that he shot his attacker in the stomach. Rather, he testified that he had no personal knowledge of that fact. Thus, Gilson’s motion to dismiss raised — and the trial court ruled on — an issue that does not exist under the facts of this case. And the trial court’s finding that the shirt amounted to impeachment evidence indicates that this nonexistent factual scenario impacted the trial court’s ruling. Thus the State’s failure to make sufficient legal argument in response to a nonissue does not deny this court the opportunity to remand the case to the trial court to reconsider Gilson’s motion in light of the full record.
 
 See State v. Burton,
 
 314 So.2d 136, 138 (Fla.1975) (“[S]uch orders, judgments or decrees which are the product of fraud, collusion, deceit, mistake, etc .... may be vacated, modified, opened or otherwise acted upon
 
 [ajt any time.
 
 This is an inherent power of courts of record [] and one essential to insure the true administration of justice and the orderly function of the judicial process.” (emphasis added)). Gil-son’s counsel’s failure to provide the trial court with Deputy Cohen’s complete testimony led to the trial court’s erroneous conclusion, and Gilson should not now be able to preclude appellate review of that error.
 
 [3]
 

 With regard to the destruction of Gilson’s automobile, Gilson argued in his motion to dismiss as follows:
 

 The materiality of this evidence is that [Gilson] has hired a reconstructionist in order to recreate the shooting incident to
 
 show that [he] was shot in the back, and not in the front as Deputy Cohen testified.
 
 The expert would need to examine the automobile to measure angles for trajectory purposes. This avenue of defense has been forever foreclosed due to the actions of the police.
 

 (Emphasis added.)
 

 Because Gilson again seeks to impeach the nonexistent testimony of Deputy Cohen that he shot his assailant in the abdomen, Gilson’s claim that the automobile is necessary for him to receive a fair trial must fail. Furthermore at the first trial, only photographs of the car were introduced by either party, and Gilson made no attempt to have the car inspected by an expert at that time. And even if Gilson’s expert was able to examine the car and came to the conclusion that a bullet that struck Gilson was fired from behind the car through the driver’s seat, such evidence would only confirm Deputy Cohen’s testimony that he continued to shoot toward the car as the car drove away. Photographs of the car show blood on the upright backrest of the driver’s seat, as well as a hole in the driver’s seat. Because these photographs support Gilson’s claim that he was shot in the back as he drove away, the actual car is not necessary to make this point.
 

 Based on our review, the record before us does not support the trial court’s finding that the destroyed evidence was favorable to the defense as impeachment evidence. We therefore reverse the trial court’s order dismissing the charge and remand for the trial court to reconsider Gilson’s motion in light of a full reading of the testimony from the first trial.
 

 
 *268
 
 Reversed and remanded for further proceedings.
 

 CRENSHAW and MORRIS, JJ., Concur.
 

 [1]
 

 . We acknowledge that at the hearing on Gil-son's motion to dismiss, the State failed to advise the trial court of the availability of the photograph and that the State failed to argue below that the photograph would provide the alternative evidence to impeach Deputy Cohen's description of the assailant. However, at his first trial, Gilson used this photograph rather than introducing the actual shirt.
 

 [2]
 

 . The State’s only argument below in response to the motion to dismiss was that the
 
 Brady
 
 violation cases cited by Gilson all referenced the destruction of evidence prior to the original trial and that because Gilson already had been tried once, these cases did not apply to the instant case.
 

 [3]
 

 . We have not concluded that there has been any fraud or intentional misrepresentation presented to the trial court. However, a mistaken statement of facts cannot serve as a basis for a legal conclusion that is without redress on appeal.